**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2349-16T1

SERGEANT FIRST CLASS
FRANK CHIOFALO, a member
of the New Jersey State
Police (Badge No. 4772),

    Plaintiff-Respondent/
    Cross-Appellant,

v.

STATE OF NEW JERSEY,
DIVISION OF STATE POLICE
OF THE STATE OF NEW JERSEY,
and DIVISION OF LAW AND
PUBLIC SAFETY,

    Defendants-Appellants/
    Cross-Respondents,

and

ROBERT CUOMO and
JOSEPH R. FUENTES,

    Defendants.

_____

Argued April 26, 2018 — Decided June 21, 2018

Before Judges Simonelli, Haas and Rothstadt.

On appeal from Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-
0049-13.

Adam Robert Gibbons, Deputy Attorney General, argued the cause for appellants/cross-respondents (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Adam Robert Gibbons, on the briefs).

George T. Daggett argued the cause for respondent/cross-appellant.

PER CURIAM

Plaintiff, Frank Chiofalo, a retired New Jersey State Trooper, filed a complaint under the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8 (CEPA), against defendants, State of New Jersey; Division of State Police of the State of New Jersey (NJSP); Division of Public Safety; Robert Cuomo; and Joseph R. Fuentes. After the trial court denied defendants' motion for summary judgment, the matter was tried before a jury that returned a verdict in favor of plaintiff. The trial court entered judgment against defendants and later denied their motions for judgment notwithstanding the verdict, R. 4:40-2(b), and for a new trial, R. 4:49-1(a).

Defendants now appeal from the trial court's April 1, 2016 order denying their motion for summary judgment, and its November 18, 2016 order denying their post-verdict motions.[1] Plaintiff

---

[1] Plaintiff's notice of appeal only refers to the November 18, 2016 order as the subject of this appeal. Normally, we do not consider judgements or orders not identified in the notice of

cross-appeals from the trial court's November 18, 2016 order, challenging the amount of attorney fees awarded by the court.

On appeal, defendants argue that summary judgment should have been granted because plaintiff failed to prove a prima facie case under CEPA. Defendants also contend that at trial: (1) plaintiff's testimony alone was insufficient to prove his economic damages; (2) the court erred in permitting plaintiff to testify as to future wage loss when he voluntarily quit his job; and (3) it was error for the trial court to instruct the jury on punitive damages because defendants' conduct was not egregious. In his cross-appeal, plaintiff argues that the trial court's award of counsel fees only accounted for the time he spent in court. For the reasons that follow, we vacate the court's final judgment and reverse the orders denying defendants' summary judgment and awarding plaintiff counsel fees.

The facts in the motion record, viewed "in the light most favorable to [plaintiff,] the non-moving party[,]" Globe Motor Co. v. Iqdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)), are

_____

appeal. See R. 2:5-1(f)(3)(A) (stating that a notice of appeal "shall designate the judgment, decision, action or rule, or part thereof appealed from"); Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 461-62 (App. Div. 2002) (stating that appellate review pertains only to judgments or orders specified in the notice of appeal). However, plaintiff's accompanying case information statement identified the April 1, 2016 order, and all parties have fully briefed the issue before us.

summarized as follows. In 2012, plaintiff, a member of the NJSP since 1988, was an assistant administrative officer stationed at the NJSP Totowa barracks. He held the rank of Sergeant First Class, which entitled him to be referred to as "Sergeant Major." His job duties were clerical in nature, and included the processing of incoming and outgoing documents. After he filed his complaint in this action, plaintiff notified the NJSP that he was retiring effective July 1, 2013. He retired on that date in good standing.

Plaintiff's claims arose from an incident in March 2012, relating to Trooper Joseph Ventrella and another trooper who were involved in an unauthorized high-speed escort of civilians driving high-end cars down the Garden State Parkway. Once identified, both troopers were suspended and eventually terminated from their positions. Major Robert Catullo, who was the commanding officer at the Totowa barracks in charge of those two members, and his staff were also relieved of their positions. On April 27, 2012, defendant Major Robert Cuomo replaced Catullo and became plaintiff's supervisor.

On that same date, plaintiff received, from Deputy Branch Commander of Field Operations Major Edward Cetnar, a copy of an April 4, 2012 letter, which had been written by a civilian to defendant Joseph R. Fuentes, the NJSP's superintendent, commending Ventrella for his participation in the escort event. Fuentes

received the letter on or about April 13, 2012. By April 23, 2012, Ventrella was suspended from the NJSP.

Contrary to his usual procedure for such documents, plaintiff never "doc track[ed]"[2] the letter because he did not know what to do with it. Instead, plaintiff made a copy of the letter and gave it to Catullo who told plaintiff that he would attempt to learn more about the letter and get back to him. However, Catullo never got back to plaintiff as he was relieved of his position later that day and replaced by Cuomo. On April 30, 2012, plaintiff took a copy of the letter to Cuomo, and Cuomo assured plaintiff that he would call Cetnar and get back to plaintiff.

After a week of not hearing anything, plaintiff decided to follow up with Cuomo. When he did, Cuomo informed plaintiff that the letter did "not exist." Plaintiff responded that the letter did exist and he told Cuomo, "I'm not going to get rid of it." Cuomo then told plaintiff, "[D]o not approach me with it again." Cuomo never explicitly told plaintiff to "get rid of it" or otherwise destroy the document, but plaintiff understood that he was being told to destroy it and to not discuss it again. After the conversation, plaintiff brought the document back to his desk

---

[2] "Doc track[ing]" refers to the process of scanning and assigning a number to incoming paperwork in order to track the document in the NJSP's computer system.

and put it in a bin where he kept unfinished paperwork. He hoped that someone would tell him what to do with it, but no one ever did. There were no further discussions between plaintiff and anyone else in the NJSP about the document and plaintiff never destroyed or otherwise disposed of the document.

In addition to the incident involving the recommendation letter, plaintiff's claim relied upon a discussion he had with Cuomo about Cuomo's improper documentation of hours worked. According to plaintiff, after Cuomo once questioned the amount of vacation time plaintiff was taking, plaintiff responded that he took his "time and . . . deduct[ed] it appropriately, unlike others." Plaintiff believed that Cuomo had falsified his time records based upon plaintiff's review of the timesheets for the twenty-five staff troopers located at Totowa, which he performed as part of his regular job duties. Plaintiff never mentioned his suspicions to anyone else prior to filing his complaint.

Plaintiff was later denied a promotion to Lieutenant, even though he was highly recommended for one, and he was transferred out of Totowa to Netcong, which plaintiff viewed as unwarranted adverse employment actions. According to plaintiff, he was not promoted because of the incident with Cuomo involving the civilian's letter about Ventrella.

Plaintiff filed a complaint, which he amended on June 12, 2013, alleging two violations of CEPA: (1) Cuomo directing him to cover up information contained in State Police documents, and (2) Cuomo falsifying his time records. Plaintiff also alleged that he was denied a promotion, transferred to another position, and stripped of his title of "Sergeant Major" in retaliation for reporting Cuomo.[3] Although plaintiff alleged that he was retaliated against for his "object[ion] to and refus[al] to participate in any activity, policy or practice which he reasonably believed was a violation of law and was fraudulent or criminal[,]" he did not identify any law or regulation upon which he relied.

In 2016, defendants moved for summary judgment, arguing that plaintiff failed to set forth a prima facie case under CEPA. Defendants contended that plaintiff failed to present any evidence suggesting that he had a reasonable belief that Cuomo's conduct violated a law, rule, regulation or mandate of public policy. They also argued that plaintiff was not a whistleblower as contemplated by N.J.S.A. 34:19-3(c), and, in any event, he failed to establish

---

[3] After plaintiff filed suit, the NJSP launched an internal investigation of plaintiff. Plaintiff was charged with "[u]nauthorized [u]se [o]f Division [d]ocuments[.]" He was also accused of keeping an official document, and failing to report a reportable incident. The investigation found that plaintiff's complaint against Cuomo was unfounded, and it substantiated the violations against plaintiff.

a causal connection between the alleged whistleblowing and alleged employment actions.

On April 1, 2016, the trial court denied defendants' motion, finding that there were genuine disputes of material fact. The court concluded that "plaintiff brought the document to the attention of his superiors and then he suffered a loss of responsibilities thereafter. . . . [Viewed] in the light most favorable to . . . plaintiff, [he] would have a winning case." On May 20, 2016, it denied defendants' motion for reconsideration.

The matter was then tried before a jury that returned a verdict in favor of plaintiff, awarding him $5400 in back pay, $50,000 in future wages, $250,000 in lost pension benefits, and $150,000 in punitive damages. Defendants moved for judgment notwithstanding the verdict, R. 4:40-2(b), or in the alternative, a new trial, R. 4:49-1(a), or remittitur. On November 18, 2016, the trial court denied both motions and granted plaintiff's motion for counsel fees under CEPA. This appeal followed.

We begin with defendants' appeal from the April 1, 2016 order denying their motion for summary judgment. Among their contentions on appeal, defendants argue that plaintiff failed to present a prima facie claim under CEPA because he failed to "identify a specific law or policy that prohibited . . . Cuomo's conduct[.]" Defendants contend that plaintiff "never presented any evidence

to suggest there was any . . . policy directing that the destruction of official documents was improper, other than his subjective conclusions." Similarly, they contend "that [p]laintiff's conduct relating to [his comment about] Cuomo's timekeeping did not amount to whistleblowing." According to defendants, plaintiff's statement that he "put in [his] time properly, unlike others" was too ambiguous to constitute whistleblowing.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must "be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

Applying these guiding principles, we conclude plaintiff failed to meet his burden on summary judgment to establish a prima facie claim under CEPA. To establish a prima facie case of retaliatory action under CEPA,

a plaintiff must demonstrate:

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

(2) he or she performed a "whistle-blowing" activity described in [N.J.S.A.] 34:19-3(c)[4];

(3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

---

[4]  N.J.S.A. 34:19-3(c) provides in pertinent part:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

. . . .

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .;

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

A-2349-16T1

> [Lippman v. Ethicon, Inc., 222 N.J. 362, 380
> (2015) (quoting Dzwonar v. McDevitt, 177 N.J.
> 451, 462 (2003)).]

The first of these prongs is "a pivotal component[.]" Hitesman v. Bridgeway, Inc., 218 N.J. 8, 32 (2014). The plaintiff must identify an "authority in one or more of the categories enumerated in the statute that" he or she reasonably believes has been violated. Ibid.. Although the employer's conduct need not constitute an actual violation for the CEPA claim to be viable, Dzwonar, 177 N.J. at 462, the identified authority "provides a standard against which the conduct of the defendant may be measured." Hitesman, 218 N.J. at 33.

Plaintiff has identified the violation as self-evident, that official police records should not be destroyed, and that an employee should not be falsifying timesheets. However, plaintiff failed to articulate "an authority recognized by CEPA" that defendants have violated. Ibid. In order for a plaintiff "to assert a CEPA claim[,]" he or she "must identify a law, rule, regulation, declaratory ruling adopted pursuant to law or professional code of ethics that applies to and governs the employer[.]" Ibid. "[W]hen a plaintiff brings [an action] pursuant to [N.J.S.A.] 34:19-3[(c)], the trial court, as a threshold matter, must 'first find and enunciate the specific terms of a statute or regulation, or the clear expression of public

policy, which would be violated if the facts as alleged are true.'" Dzwonar, 177 N.J. at 463 (citations omitted).

When relying upon a claim under an alleged "clear mandate of public policy[,]" a plaintiff is still required "to identify a source of law or other authority, constituting an expression of public policy, that sets a governing standard for the defendant employer's conduct." Hitesman, 218 N.J. at 33. Although "a 'clear mandate' of public policy need not be enacted in a constitution, statute or rule, [it] must nonetheless provide a definite standard by which the employer's conduct may be gauged[.]" Ibid.; see also Massarano v. N.J. Transit, 400 N.J. Super. 474, 488-90 (App. Div. 2008). "The trial court can and should enter judgment for a defendant when no such law or policy is forthcoming." Dzwonar, 177 N.J. at 463.

Here, plaintiff never identified any law or regulation that he claimed Cuomo violated by telling plaintiff not to approach him again about the copy of the letter written by a civilian to the NJSP Superintendent, which plaintiff identified as an official record without citation to any authority. Similarly, plaintiff never identified any specific regulation that Cuomo violated by not reporting his time correctly, as plaintiff believed. To the extent plaintiff relied upon a violation of "clear mandate of public policy[,]" plaintiff still failed to come forward on summary

judgment with "a source of law or other authority" to support his claim.  <u>Hitesman</u>, 218 N.J. at 33.  Absent that proof, defendants were entitled to summary judgment.

Because we are satisfied defendants were entitled to the dismissal of plaintiff's complaint on summary judgment, we need not reach defendants' remaining arguments.  We only note plaintiff's passing comment about Cuomo's timekeeping was hardly "whistleblowing" as contemplated by CEPA.  See <u>Tartaglia v. UBS PaineWebber, Inc.</u>, 197 N.J. 81, 109 (2008) (stating that a plaintiff is not required to make a complaint to an outside authority, although doing so would "ordinarily be a sufficient means of expression, [while] a passing remark to co-workers" or "a complaint to an immediate supervisor generally would not"); <u>see also</u> <u>Battaglia v. United Parcel Serv., Inc.</u>, 214 N.J. 518, 560 (2013) (stating actions taken by a plaintiff must clearly demonstrate to his employer "plaintiff was trying to blow the whistle").

Judgement vacated.  The orders denying defendants' summary judgment and granting plaintiff counsel fees are reversed.  The matter is remanded for entry of an order dismissing plaintiff's complaint with prejudice.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2349-16T1