**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5478-17T2

JOHN DITARANTO,

     Plaintiff-Appellant,

v.

PASSAIC COUNTY
PROSECUTOR'S OFFICE,

     Defendant-Respondent.

_____

> Argued May 1, 2019 – Decided May 22, 2019
>
> Before Judges Koblitz, Currier and Mayer.
>
> On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0919-18.
>
> Frank C. Cioffi argued the cause for appellant (Sciarra & Catrambone, LLC, attorneys; Frank C. Cioffi, of counsel and on the briefs).
>
> J. Kevin McDuffie, Assistant County Counsel, argued the cause for respondent (Michael Glovin, Passaic County Counsel, attorney; J. Kevin McDuffie, on the brief).

PER CURIAM

Plaintiff John DiTaranto appeals from a July 12, 2018 order denying his motion for reconsideration. Although he does not appeal from the May 29, 2018 order upon which his motion for reconsideration was based, we address that order as well. The May 29, 2018 order denied plaintiff's application for the following relief: reinstatement as a police officer, permission to carry a weapon, dismissal of the Department's disciplinary charges, and attorney's fees. We affirm both orders.

Plaintiff was a police officer with the City of Paterson Police Department (Department). On August 16, 2015, he was involved in a domestic violence incident with his ex-wife and her boyfriend. On that date, plaintiff confronted his ex-wife and her boyfriend, pointing his service weapon at the boyfriend. As a result of this incident, plaintiff was arrested and charged with simple assault, N.J.S.A. 2C:12-1(a), harassment, N.J.S.A. 2C:33-4(a), and criminal mischief, N.J.S.A. 2C:17-3(b)(2). Based on plaintiff's conduct, his ex-wife obtained a temporary restraining order (TRO).

Due to plaintiff's involvement in a domestic violence incident, defendant Passaic County Prosecutor's Office (PCPO) and the Department were required to seize plaintiff's service weapon and conduct an investigation. The

Department's Internal Affairs (IA) Division launched an investigation into the domestic violence incident. In August 2016, after a year-long investigation, the IA Division recommended the allegations against plaintiff be sustained and submitted a written report to the deputy police chief of the City of Paterson (City).[1]

On September 12, 2016, plaintiff received a preliminary notice of disciplinary action (PNDA) issued by the City related to his continued employment with the Department based on the domestic violence incident. Responding to the PNDA, plaintiff submitted reports from three psychologists.[2] All three psychologists recommended plaintiff be rearmed and returned to regular duty without restriction.

On December 6, 2016, a disciplinary hearing was held on the PNDA. After considering the evidence, the hearing officer concluded the City had proven by a preponderance of the evidence that plaintiff was insubordinate, demonstrated conduct unbecoming a public employee, "caused a dangerous

---

[1] A recommendation of "sustained" means there is sufficient evidence to charge an officer with misconduct.

[2] Two of the psychologists treated plaintiff. The third psychologist was employed by the City.

A-5478-17T2

confrontation while he was in an agitated state," and failed to display "behavioral control and respect for commands of fellow police officers."

The PCPO also investigated plaintiff's conduct. As part of its investigation, the PCPO asked plaintiff's treating psychologist, Dr. Shah, to review several fitness for duty evaluations of plaintiff and the videotape of the August 2015 domestic violence incident. After reviewing the material, Dr. Shah maintained that plaintiff should be rearmed and returned to work without restriction.

The PCPO asked the City's deputy police chief to submit a written recommendation regarding plaintiff's ability to return to work as a police officer.[3] The deputy police chief wrote, "under no circumstance should [plaintiff] be trusted with the great responsibility of carrying a gun." This recommendation was based on the deputy police chief's experience as a police officer and supervisor and plaintiff's extensive IA record. According to the IA record, twenty-eight complaints had been made against plaintiff since 2007, with more than one-half of the complaints involving allegations of excessive force.

---

[3] Police chiefs are required to recommend whether a law enforcement officer should be reinstated after a domestic violence incident. Attorney General, Law Enforcement Directive No. 2000-3 at 3 (Sept. 19, 2000).

In addition, the deputy police chief emphasized that the videotape of the domestic violence incident influenced his determination not to rearm plaintiff because plaintiff was violent and abusive. The deputy police chief concluded rearming plaintiff would be "extremely negligent."

In September 2017, after a two-year inquiry, the PCPO issued a decision against rearming plaintiff based on its investigation, plaintiff's IA history, and the recommendation of the City's deputy police chief. Because all Department officers are required to be armed to perform their duties, the PCPO's decision rendered plaintiff unable to perform his duties.

In March 2018, another hearing was held to determine if plaintiff should be terminated from the Department. During that hearing, the deputy police chief explained his reasons for recommending against rearming plaintiff. He emphasized that plaintiff was treating with his personal psychologist when the excessive force complaints were filed and the domestic violence incident occurred. Based on the PCPO's decision not to rearm plaintiff, the hearing officer recommended the Department terminate plaintiff's employment.

Plaintiff filed a complaint in lieu of prerogative writs, alleging the PCPO's decision against rearming him was arbitrary and capricious and violated the procedural requirements of N.J.S.A. 2C:25-21(d), governing the return of a

seized weapon. In addition, plaintiff filed an order to show cause (OTSC), seeking various relief, including reinstatement to the Department without restriction.

On the return date of the OTSC, plaintiff argued the PCPO's decision against rearming him was arbitrary and capricious because the PCPO did not address or acknowledge the psychological reports. The PCPO responded the decision not to rearm plaintiff was based on its thorough two-year investigation and was supported by sufficient credible evidence.

Plaintiff also argued the PCPO failed to file a petition regarding seizure of the weapon, pursuant to N.J.S.A. 2C:25-21(d)(3), within forty-five days of its decision not to rearm plaintiff. The PCPO acknowledged no petition was filed because plaintiff's service weapon had been returned to the Department. The PCPO asserted the statute applied only to the seizure of personal weapons.

On May 29, 2018, the judge denied plaintiff's OTSC, concluding the PCPO's determination against rearming plaintiff was not arbitrary or capricious. In addition, the judge concluded the PCPO was not required to file a petition pursuant to N.J.S.A. 2C:25-21(d)(3) since the confiscated gun was not plaintiff's personal weapon. The judge acknowledged the PCPO was required to, and did,

6

A-5478-17T2

consider all recommendations and information regarding the rearming of plaintiff and his returning to work.

Plaintiff filed a motion for reconsideration, arguing the court erred in not enforcing the forty-five-day filing requirement for the forfeiture of a weapon. The judge denied the motion for reconsideration, finding plaintiff failed to provide any additional information or controlling law that would alter the OTSC decision.

On appeal, plaintiff argues the judge erred in finding the PCPO's decision was not arbitrary or capricious. Plaintiff also contends the PCPO's decision was not supported by substantial credible evidence. He further asserts the PCPO's failure to file a petition pursuant to N.J.S.A. 2C:25-21(d)(3) mandates the return of his service weapon and reinstatement to the Department.

Prosecutorial decisions regarding forfeiture of public employment are reviewed under an abuse of discretion standard. See Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 570–71 (2002). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 571 (quoting Achacoso–Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)). The Court stated an abuse of discretion exists "if [a party] can show that a prosecutorial

[decision] (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." Ibid. (quoting State v. Baynes, 148 N.J. 434, 444 (1979)).

As the State's chief law enforcement officer, the Attorney General "has the authority to adopt guidelines, directives, and policies that bind police departments throughout the State." N. Jersey Media Group, Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 565 (2017); N.J.S.A. 52:17B-97 to -117. In 2000, the Attorney General issued a directive setting forth procedures for the seizure of weapons from police officers involved in domestic violence incidents. See Attorney General, Law Enforcement Directive No. 2000-3 (Sept. 19, 2000) (Directive).

According to the Directive, when an officer is involved in a domestic violence incident, the county prosecutor shall "conduct an immediate investigation of the incident and determine whether the officer should be permitted to carry a weapon . . . ." Directive at 3. The "chief of the law enforcement agency where the officer is employed" must conduct an investigation into the officer's background and recommend whether the officer should be rearmed. Ibid. The decision to rearm an officer "rests with the

[c]ounty [p]rosecutor . . . ." Directive at 4. The interests of the public health, safety, and welfare are important in a prosecutor's decision concerning the rearming of a police officer involved in a domestic violence incident. In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 507-08 (2016).

Here, plaintiff was arrested following a domestic violence incident in August 2015. Plaintiff's service weapon was seized by the police, and the PCPO and the Department investigated the incident and plaintiff's background.

Sufficient credible evidence in the record supported the PCPO's decision against rearming plaintiff. The decision was premised upon a review of plaintiff's history of violence, use of excessive force while on duty, twenty-eight IA complaints, the domestic violence incident, and the deputy police chief's recommendation that plaintiff not be rearmed. The PCPO also had access to plaintiff's supporting psychological reports. The deputy police chief acknowledged the psychologists' recommendations and explained he disagreed with the recommendations because none of the psychologists observed plaintiff's behaviors under the stressful and rigorous conditions of active duty.

Having reviewed the record, the PCPO's decision was not based on impermissible or irrelevant factors and considered all of the information gleaned from its investigation. Therefore, the PCPO did not abuse its discretion.

We next consider plaintiff's argument that N.J.S.A. 2C:25-21 governs the return of his service weapon. The statute provides for the return of personally owned weapons seized by the police as a result of a domestic violence incident involving the gun owner. See N.J.S.A. 2C:25-21(d)(1)(b). In accordance with this statute, a prosecutor, within forty-five days of the weapon seizure, may petition the court to obtain title to the weapon on the grounds that the owner is unfit or poses a threat to the public in general or to a particular person or persons. N.J.S.A. 2C:25-21(d)(3).

Plaintiff's reliance on N.J.S.A. 2C:25-21(d)(3) is misplaced as the statute applies only to personal weapons seized by law enforcement. Plaintiff did not own his service weapon because the gun was issued to him by the Department in connection with his employment as a police officer. When a duty weapon is surrendered or seized, it must be "returned to the custody and control of the department which issued that weapon." Directive at 2. Therefore, N.J.S.A. 2C:25-21(d)(3) does not accord any basis for the return of plaintiff's service weapon.

10

We turn to defendant's argument that the judge erred in denying his motion for reconsideration. When reviewing a motion for reconsideration, courts determine whether the trial court abused its discretion. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). Reconsideration should be granted in "cases which fall into that narrow corridor in which either (l) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Here, there was no new evidence presented. Plaintiff simply repeated the arguments raised in support of his OTSC. In denying plaintiff's OTSC, the judge explained why N.J.S.A. 2C:25-21(d)(3) was inapplicable. He also addressed the psychological reports and the PCPO's conclusion not to rearm plaintiff based on its own investigation and the deputy police chief's recommendation. Plaintiff failed to provide any new information or controlling law which the court overlooked in denying the OTSC.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11